I'm going to try and reserve three minutes for rebuttal. We're here today because the District Court, after ten long years of litigation and after the recovery for the plan participants of $1.28 million in plan benefits that, in 2003, these plan participants had been told they were going to literally get nothing. After ten long years of litigation from 2005 to 2015, and actually in 2014 is when the order was given that all benefits would be paid, and the Court, in its order that had been issued in 2015, said this was the time the defendant now finally complied, and actually pointed out that it finally had complied with a judgment that had been given in 2010. So, counsel, your time is ticking. And forgive me for interrupting, but at least on my scorecard, it's going to be really important to distinguish. This was round three, and so much of your argument, and in your briefing as well, harkens back to the beginning. But those, what I'm calling chapter one and chapter two, round one, round two, you won. And those fees were dealt with. So at least for me, I'm just speaking for myself, I'm looking at round three. Well, I think it's important to look at it from all different perspectives, because I think no matter what perspective you look at it, the District Court got it wrong in saying that there was no success in this case. So could you just hear me and look at round three, because I agree with you. My understanding of the law is that you just have to show some success. It's not prevailing party that it's easier, right? And so I'm looking, and then, that's a threshold decision. Some success on the merits would trigger the humble factors. In this case, the judge didn't get to the humble factors. So I'm really focusing on that finding, which was that your client didn't show, in round three, success on the merits. If you think I've framed the question incorrectly, please correct me, but I think that's what the judge was answering in round three. I think that that certainly was answering the successes in that third aspect of the case. I was just trying to point out that there, I think the Mika case, the recent Mika Mika case points out that aspects of the entire litigation should be considered, not just the last phase of litigation, but I'll focus on that. I'll give you that, because in round three, your position was, look, they're still not in compliance. They weren't in compliance, right? In round one, they were told. In round two, they were told. I understand that. But he was still really just answering the question about fees for round three. So what is your strongest argument that you demonstrated some success on the merits in round three? Well, there were multiple times that there were successes on the merits in round three. First in 2012, multiple successes on the merits where we proved that they were trying to short change benefits by not paying, by not grossing up, as the court used it, for FICA taxes, which ended up being a benefit of $97,000 in additional payments. So there's $1.28 million paid in benefits, but also $97,000. They were told to pay that at the end of round two. Exactly. And they hadn't paid it. And they challenged it again. But that's my first question. Did the payment of, I'm going to call it FICA and Medicare, is it Medicare? That those two elements remained a contested point in round three. Is that right? They shouldn't have remained a contested point, but they became a contested point. And in fact, if you look at the order in 2012 . . . Here's the question. Okay. I think they were ordered to pay at the end of round two. Is that right? Well . . . And that's why it shouldn't have been contested. That's your argument in your briefing. Yes. Okay. Were they contested in round three? Absolutely. Multiple times. You'll see that the order in 2012 . . . Did they ever offer to pay them in round three prior to the time the special master made a recommendation? Not that I'm aware of. In fact, that's why there's first that order, because they're contesting, claiming in 2012 that they shouldn't have to pay those, that that should be reconsidered. And then when that order comes down and says that those do still need to be paid, that that's what the meaning of the 2010 judgment was, they then filed a motion to reconsider on that point and put it again before the special master. The special master had to then say . . . And in fact, at the end of the special master's ruling, the special master said one of the reasons why, when it was discussing attorney fees, which it got completely wrong as well, but in discussing that, at least, it pointed out the fact that it was part of the reason why there was bad actions here by the employers continuing on into this third phase of litigation was how they continued to fight this issue of grossing up . . . Okay. So that skirmish about that particular issue is folded into the special master's fees, which they had to pay. But did the motion you're talking about, where the fearless requested reconsideration and so that it took some of the district court's time, or was that resolved by the special master? Well, it was certainly a part of the special master's . . . So in other words, why wasn't that captured by the award of fees for the special master's work? Well, because all of the work that the special master was doing was on behalf of . . . was creating all these litigation fees for the plaintiff's attorneys. That's why I'm asking you, counsel, if this issue continued to float up, what I'm calling this float up, so that it was part of the district court's action, as opposed to being sort of a satellite issue that was being handled by the special master over here in the field. The district court's order then confirmed all of the decisions made by the special master, which had been challenged . . . Including that the special master's fees were going to be paid by fearless. Right, but not that the plaintiff's attorney fees were going to be paid. So I mean, that's the bottom line of all of the case law in the Ninth Circuit, is that if you don't pay the fees for the counsel . . . Your fees weren't paid, period, in the special master proceedings, I'm going to call it that, or in the district court, if that's your response. Right. Everything since 2010 hasn't been paid. So when you say everything, that's not really right. You mean attorney's fees haven't, because the special master's fees were, and the actuary fees were, right? Right, over the contested . . . again, contested by the fiduciary employers. Okay. I'm really getting in your way, and I don't mean to, but can you tell me . . . I asked you what's your strongest argument about this threshold issue, about some success on the merits, and we just talked about FICA and Medicare. So that those remain contested, and that you ultimately prevailed. What's your next best argument? Well, and then it continued to win the battles in front of the special master, where the special master determined, which was ultimately ordered through the district court, accepted these recommendations, but proved that there had been violations of what had been ordered in 2010, that they still weren't compliant with ERISA, they still weren't providing a defined benefit plan, they were providing a defined contribution plan. Because of providing a defined contribution instead of a defined benefit plan, as had been ordered, they were then underfunding, because there's greater requirements for funding, and that there was no protection by the PGBC for the benefits of this plan, because it, again, wasn't being treated as a defined benefit plan. And so in all those ways, they were violating not only what they had initially promised back in 1995 to all their employees, but also what ERISA requires, and also what had been ordered in 2010. So all those violations were found, including, again, found that the benefits were being shortchanged by not wanting to pay these FICA taxes. And so then it's that finding that then results in, we've got to find a solution to it, and the special master suggests a solution that then the defendants opposed, as stated by the court in his order, defendants opposed this solution of, okay, well, if you can't find a way to comply with my order, then I'm going to liquidate the plan, and we're going to pay benefits now, and not in whenever people die or retire. But, counsel, how did the district court abuse this discretion by saying that because the rather than either of the parties, that neither party was entitled to fees? What was abuse, what was an abuse of discretion about that determination? Well, it's first an abuse of discretion because it doesn't use the legal standard that's required. Legal standard that's been required and been in this, well, that was re-established in HART, although it had been the standard in the Ninth Circuit, I think, all the way back to that. Some success on the merits. Some success, and you don't have to be a prevailing party. And so it's... So going back to Judge Rollinson's question, this is this threshold issue, some success on the merits, and then there would have been application of the Hummel factors. If the judge had found that you were qualified as having achieved some success on the merits, could the judge have applied those factors and still resolve this the way Judge Rollinson is anticipating, which is to say, you didn't come up with this solution, the special master did, and denied fees? There is no such, you didn't come up with a solution test in the Ninth Circuit. In fact, it contradicts prior Ninth Circuit tests. Well, that certainly fits within the Hummel factors analysis. Sure, it does. If the judge had decided that you, unless it's your position, that after establishing the threshold, you would have been entitled to fees without application of the factors. Well, the Ninth Circuit has said several times that it's the result that matters, not how you get there. And the result that mattered was that we got all the fees paid. That's for the threshold counsel. I'm asking you a different question. If I give you that there should have been a finding that you demonstrated some success on the merits, my question then is, the judge would then have to go on and apply the factors, right? Yes. And couldn't he have done what Judge Rollinson is saying, which is get into that and look at the work done by plaintiff's counsel and by defense counsel and said, I've weighed these factors and I don't think you're entitled to fees. Could he have done that? He could have done that. And certainly, he should have done that. That's what should have happened, is he should have first found that there was some success and then gone through the factors from Hummel. But the factors in Hummel all support our case, and that's what we'd ask this Court to do, is to do what it's done many times in prior cases, which is find that District Court didn't properly apply the Hummel factors, in fact, didn't even get to them here. Well, if he had reached the factors and decided that the plaintiff, and it's just in a hypothetical because I'm not trying to cast aspersions, but if he had reached the factors and decided that plaintiff's counsel in some other case were more trouble than they're worth trying to get to a conclusion and that this took six years and it was very, very frustrating and really it was the special master who reached the right result, then could the judge have denied fees under our case law? Shouldn't have under this case law because the case law has repeatedly said that there's two policies that we're trying to implement here. One being that plaintiffs are made whole. If you don't award attorney fees to attorneys that succeed in getting to the result that the plaintiffs here got to, which was getting paid all their benefits without fear of underfunding, without being shortchanged, without being subject to insolvency of the business, all things found by the special master and ordered by the District Court, then if you don't award attorney fees, then they aren't made whole because they're getting their $1.4 million in benefits, but then they're having to pay their attorneys out of that. I'm asking you to entertain a hypothetical, which is that you won all of that after round two. You're entitled to all of that after round two and that if a judge in a hypothetical case applied these factors and decided that it was plaintiff's counsel that bore even perhaps even the lion's share in a hypothetical, of causing it to take an unreasonable period of time to work out the details, could the fees be denied? Well, potentially that would be within the discretion of the court, but the court would have to say that and the court would have to back it up with facts and I can't point to any fact in the record that would support that conclusion that the plaintiff's . . . What I've said here is I could go through a litany. He didn't. I could go through a litany of who did this and who did that and what I'm going to do instead is to tell you that in the 30 years of my experience, this was the line I'm talking about. That's what he did and the question Judge Rollinson is asking is why was it an abusive discretion to summarize that way? Well, I guess it's an abusive discretion in several ways. It's an abusive discretion first in that you actually have a test. The district court had already done this earlier in the litigation. That's why we know he knows the test. Exactly. He knows the test, but he chose not to apply it because the test, when he denied attorney fees for example to the defendants in 2010, he said here's the successes the defendants allege, here's why they're not successes, they're trivial and or that they're procedural. He went through that analysis. Here he doesn't do that analysis. He ignores our success in recovering the $97,000 and ignores the success of, remember in 2010 all that we had accomplished was in order of reordering what they had already promised back in 1995, what they'd already lost with the Ted Roberts decision and now again what they were being reordered to do, but it didn't actually result in what was supposed to accomplish and we proved that in that last stage of the litigation, that it didn't result in a defined benefit plan that was supposed to be established. It didn't result in them paying benefits as they were supposed to in terms of both the accounting for both the double death benefit and also accounting for the FICA taxes and that it wasn't protected against insolvency. So if this business went up at any times, potentially we would have lost all these benefits that had been reordered in 2010. So that victory was hollow. That victory was hollow. It's the victory in 2015 that was the real victory. That's the victory where actually what had been ordered was put in place and the district court even says that. Defendants have now finally complied with the court's order. That's in its own ruling that then goes on to say despite the fact that the plaintiffs got us there, plaintiffs' attorneys got us there through five more years of litigation, they don't get any award of attorney fees based on no success on the merits despite the fact that there are, I could count them, 13 different successes on the merits. In the little battles along the way, just in the 2010 to 2015 and in 2015, they won the war. They got their benefits that weren't no longer subject to insolvency. I want to save a little bit of time for rebuttal. All right. Thank you, counsel. May it please the court, Don Farley for the appellees. I think the issue is properly framed before the court and that is whether or not Judge Windmill abused his discretion in determining that there had not been a demonstration of some degree of success on the merits and therefore he did not reach or go into a litany of other facts in order to justify his decision. He relied primarily upon the decision of the special master in his first report and recommendation and even though he didn't say so, his second report and recommendation because this was a case in which the special master had to be involved twice. Not only once to determine or at least to address the issue of whether or not a defined benefit plan could be put in place in order to pay benefits to those people who were still employed by appellees or by the stinker stores, but also the second time when the special master had to come back again and determine that what he said the first time so far as the discount rate to be used was not what the appellant's attorneys and their expert Mr. Turpin claimed should be used in order to discount the present value to pay the lump rate and the one that had been used by the appellee's actuary, Michelle Sutterland . . . The special master recommended that each side bear their own fees. Correct. Did the special master in doing that apply the legal standard that the court is obligated to apply? No. And so that gives me some pause because I can easily understand why the district court particularly given it's expressed exasperation with this case decided to implement the recommendation. But if the recommendation is not built on a solid legal foundation, how can we sustain it? Well, I don't think that it . . . it's sort of two questions in my view, Your Honor. The question of whether or not attorney's fees should be awarded, the comments by the special master were just a fact. Is it something that the district court could consider? I suppose so. But the special master didn't go into the determination of whether or not there was some degree of sex offense. And the district court didn't either. It had before, but it didn't this time, which is what leaves me wondering did the district court simply say . . . and let's be blunt here, the district judge in question is known to be patient and thorough by personality. There are . . . I have colleagues who are more likely to do things in a fit of frustration than this particular judge, and yet he did not try to touch the bases with regard to applying the legal standard, which is why I wonder if he simply at this point decided to apply what the special master did. I don't believe so. I don't believe so. The Judge Winemill started out his order by first of all stating, after getting past the Mr. Turpin issue in the early part of his order, recited the correct standards for consideration of whether or not attorney's fees should be awarded, citing the Simonia case and then also citing the Hart case, which was decided just a matter of a short period of time before the Simonia case. This Ninth Circuit's Simonia case. The district court then in the proper exercise of his discretion concluded that there had not been some degree of success on the merits by the plaintiffs or the appellant's attorneys here and so therefore he was not going to award attorney's fees to the appellant or the appellant attorneys. He was looking at the relevant time frame. He wasn't looking all the way back to 2008 or going forward with respect to attorney's fees that had already been addressed or issued. Forgive me for interrupting, but so why is that defensible? If he's looking at the relevant time frame, and I think he was, I think he was looking at round three and at the beginning of round three, that's opposing counsel's argument. They'd won round two and they didn't have the benefits they were entitled to, so it was necessary for them to come in and initiate round three and there was certainly resistance throughout round three, and at the end of round three, of course, they prevailed, cash in hand. So why isn't that some success on the merits? Well, first of all, I think we have to look at what the amended judgment provided for the appellants. The amended judgment said, put in place a qualified plan to pay current employees benefits when they reach age 65. It also said either buy annuities over the course of five years or negotiate lump sum settlements with participants who want to receive a lump sum settlement. All of those things occurred. What occurred first after the entry of the amended judgment was the appellant starting to scream about, this plan is not funded. This plan is not adequately funded. This plan should be a defined benefit plan. And the resistance from the appellee side was, we can't do that. We cannot, we already tried to put everybody into a qualified plan even before the judgment by adopting or trying to get the IRS to approve a BCP application to let everything go back retroactively. I agree. And I recognize that you prevailed on that legal issue. And the judge even said, I thought that might be a problem. So I agree. But what proposal did your team come up with that would have satisfied the obligation? And if not that, what proposal was made? Just continue to be able to have the qualified plan in place that would pay benefits to those employees who were still with the company when they reach age 65, or a death benefit in the event that they passed away earlier, or as occurred in some instances, let us pay you lump sum benefits, reduced to present value. They accepted two of them. I'm struck that this hadn't been worked out. And I don't mean to suggest that I think it would have been easy, but it hadn't been worked out. It was round three. They came in requesting the appointment of a special master because the parties hadn't been able to work it out. It was denied, except then, many months later, a special master was appointed because in fact it is complicated, pretty sticky, sticky wicked. And then ultimately, the special master ruled the way the special master ruled. Given the standard here, which is just some success on the merits, what's your strongest argument that that is a defensible finding, counsel? Well, because what I have to go back to, I think, is that the language itself, some degree of success on the merits, and basically is and allows the district court to make that determination through the exercise of its discretion. And here, the district court exercised its discretion and said, I don't believe that they passed that threshold. And so therefore, I'm not going to even, I mean, I'll cite the humble factors, but we don't need to go through them. The last of the humble factors- But to not, forgive me for interrupting, but to not go through them, he has to decide that they literally weren't better off at the end of round three than they were at the end of round two, doesn't he? No, I don't believe so. So that's my problem. Can you explain why not? What's your position? Well, it's really as much fact-based as anything else, because first of all, what was offered to those people who were not employees within the appellee companies was annuities. Those were offered to them at the very beginning, and they rejected them. They wouldn't allow their clients to accept them. Three of them, Brasley, Newell, and Fisher, all the way along, claimed to be entitled to more, and even into 2015 and early 2016, claimed to be entitled to more than what the special master ultimately determined to be the proper amount discounted to present value that they were entitled by application of the proper discount rate to determine what that special amount was. I mean, I know counsel, it's an advocacy, at least a trade, I will say. But we said this was six years. We paid the benefits to everybody in 2014. 2014, we paid all the lump sums out of the qualified plan in August to September of 2014. That was after the special master's decision, and we paid all the lump sums or tendered them to counsel for the appellants in July of 2015, excuse me, 2014. All of those payments were made. Let me make sure I understand here. We talked earlier about the FICA and Medicare as the example. Was all of that paid at the times you're talking about? Yes. So your argument is that, and the special master makes reference to that, commenting that defendants objected longer than they should have, but you're telling me that didn't extend into what Judge Christin has called round three? No, that was still within round three, but at least the last 30 seconds of round three consisted of the appellants still claiming after the special master's second report and recommendation that the discount rate was too low and should be higher in order to determine what the lump sum amounts were. I'm still trying to focus on the some degree of success, because why isn't it the case that plaintiffs can argue, look, there was a fight over the FICA and Medicare. It got resolved with our client's position being adopted, so our clients are better off as a result of our efforts, and that constitutes some degree of success. I understand the point, Your Honor, but it's not as great as what they say. But if some degree of success is the standard, then don't I have to answer the question, is that some degree of success? Yes, and I think you do. What they want the Court to ignore is that for the nine employees who were within the qualified plan, FICA taxes aren't an issue. They rolled over their plan benefits once the lump sums were paid out in 2014 into an IRA or a 401k. No FICA taxes were associated with that at all. And there were, I think, three, I think the record shows that there were three individuals who were still employees of the company who wanted to receive a lump sum, but because it was a lump sum paid out of a qualified plan, FICA taxes were not an issue there either. Very early on in round three, at the very beginning of round three, there was certainly consideration and discussion about payment of the incremental increase in income taxes, but we could never get there because we could never reach agreement with the appellant's attorneys about what amount would satisfy a lump sum payment to them or an annuity, because they kept insisting on death benefits, even though no one passed away or was ill, and they kept insisting on payment of all taxes. Counsel, did you oppose the motion for appointment of special master? Did I oppose? No. But the judge denied it. It was denied. And then ultimately, the special master was not appointed for many months. Is that right? I don't think that's correct. I'm sorry. Do you think it was deferred? No. Well, I think what the judge said, or what Judge Windmill determined in 2011, that, you know, I'm still having trouble figuring out whether this is really being, whether the appellees are in compliance or in the process of complying, and then, you know, provide me with briefing that shows me how you are being, or you are complying with the judgment. And if I determine, this is Judge Windmill speaking, if I determine that you are not in compliance, then I may refer it to a special master. The appellees never opposed that. I think that they came back for round three. They asked for appointment of a special master. The judge came back, I think, with an order saying, what exactly do you want, plaintiff? What is the relief you're seeking? And then, after some months, the judge wound up, so I may have misspoke when I said it was denied. After some months, the judge appointed the special master. The special master found Fearless was not in compliance, right? Without compliance. It found that it couldn't. I'm sorry? It found that it couldn't with respect to the qualified plan. That's where we started this conversation. I think that's right. That there were some legal impediments, hence my question, given that, what did your team offer? What did Fearless offer in order to provide plaintiffs with the benefits to which they were entitled? Well, we'd offered and put in place the qualified plan for the nine employees who were still with the company. And? Offered annuities. And what about everybody else? And offered lump sum settlements. When? Well, we settled the Wayman and Talent claims in 2011. Why were the Medicare and FICA add-ons that were ordered in round two continued to be at issue in round three? Fair question. It was an issue that was intertwined with they wouldn't accept what we were offering because it didn't include the consideration of the death benefits and so it just got intertwined with that as part of the same argument. Certainly separate parts of the same issues on the same motions before the court. But yes, the record does reflect that the appellees resisted paying the appellees or the employee's share of FICA taxes during round three, before it went to the special master. Do you agree with opposing counsel, because you're not going to have another chance, I want to make sure I get your position on this. Do you agree that at the end of round two, free lists had been ordered to pay those? I think the amended judgment talked about tax consequences and about taxes. I don't believe the amended judgment, which is in the record, I think, I've got it written down here, but I don't believe the amended judgment recited anything about FICA taxes specifically. I'll check. Thank you, counsel. Thank you, counsel. Thank you. Any other questions? It appears not. It's our request that the judgment of the district court be affirmed. Thank you. Thank you, counsel. To respond to, I think, if the decision of the district court were upheld, we'd be going back to, we'd be contradicting the Hart case, because we'd be creating some sort of a new standard that if you don't suggest the right remedy, or the remedy that the court uses, that then you forfeit all of your attorney fees, which is all the district court said in its decision for not awarding attorney fees here, was that we didn't suggest the right remedy. Even though we did suggest the remedy that we received in this case, which was to receive all benefits paid in full without risk of insolvency, without underfunding. The special master found those exact things, that there still was a risk of insolvency and there still was underfunding as of 2013, which takes you all the way back to, now, the benefits were taken in 2003, and we're in 2013 when the special master makes that decision. Ten years of risk of insolvency, ten years of underfunding of a plan, and not compliant with an order in 2010. The cases in the Ninth Circuit have repeatedly said that the value that comes out of these cases is in plaintiffs proving violations of ERISA, proving and recovering benefits. That's exactly what they did in the third stage of this litigation. And so to claim that there was no success on the merits is to ignore the facts of this case. This would send a tremendous chilling effect through the plaintiff's bar in ERISA litigation if we were to say that when you prevail and recover all your benefits and you get exactly what you started out trying to get in 2005, and it takes you ten years to get there, that you only get paid for the first half of the litigation, the first five years, and you don't get paid for the second half, and the first half of the litigation got you a piece of paper. It got you nothing. It was the second five years that got you the actual $1.4 million in benefits and reimbursed taxes. That's the real victory in this case and that's what these plaintiff's attorneys are entitled to recover and to make the plaintiff's participants pay for these attorney fees again would go contrary to all the policies that have been in place in these ERISA cases all the way back to 1984. In that Smith case, if you remember, the remedy that the Smith asked for wasn't the remedy that the Court gave. The Smiths were asking to win on summary judgment. The Court just remanded and said, no, I think this insurer needs to reconsider denial of benefits. And then in that process, they got all their benefits. So they got the result they wanted. They hadn't asked for that remedy, but they still got the result they wanted. This is a very similar scenario where we asked for a remedy or a result. The remedy to get there was slightly different than what we had asked for, but in the end, we supported it and we got it. It was the defendants who opposed that remedy. As you'll see in the Court's order adopting the recommendations, the Court gave chance for briefing to oppose those recommendations and in the Court's order, it pointed out the plaintiffs didn't oppose it. The plaintiffs were in support of it because it got them what they wanted in this case. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case is submitted for decision by the Court. The final case on calendar for argument today is Native Ecosystems Council and Alliance for the Wild Rockies v. Leanne Martin.
judges: Rawlinson, Clifton, Christen